# Exhibit C-1

10/10/2024 7:44 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 93049297
By: Gerardo Perez
Filed: 10/10/2024 7:44 PM

## 2024-70652 / Court: 234

CAUSE NO. _____

| | | |
|---|---|---|
| VICTORIA "ALEXIS" ROBERT, | § | IN THE DISTRICT COURT |
| | § | |
| PLAINTIFF | § | FOR HARRIS COUNTY, TEXAS |
| | § | |
| v. | § | |
| | § | |
| | § | _____ JUDICIAL DISTRICT |
| | § | |
| MONTROSE ENVIRONMENTAL GROUP, | § | |
| | § | |
| INC.; AND DOES 1-25 INCLUSIVE, | § | |
| | § | |
| DEFENDANTS | § | |
| | § | |

## PLAINTIFF'S ORIGINAL PETITION

### I.    INTRODUCTION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Victoria "Alexis" Robert ("Plaintiff") files this Original Petition against Montrose Environmental Group, Inc. and Does 1 to 25 ("Defendants") and would respectfully show the Court as follows.

### II.    DISCOVERY CONTROL PLAN

1. Plaintiff intends to conduct discovery under Level 2 of Texas Rule of Civil Procedure 190.3.

### III.    PARTIES

2. Plaintiff Victoria "Alexis" Robert is a citizen of Harris County, Texas. At all times material to this lawsuit, Plaintiff was an employee of Montrose Environmental Group, Inc.

3. Defendant Montrose Environmental Group, Inc. is a Texas corporation currently engaged in and at all times material to this lawsuit was engaged in business in Texas. Defendant may be

served with process, including citation and a copy of this lawsuit, by serving Defendant's agent, Montrose Environmental Group, Inc., 314 Deerwood Glen Dr., Deer Park, TX 77536; with Corporate Headquarters located at 5120 Northshore Drive, North Little Rock, AR 72118; or wherever this Defendant and/or registered agent may be found. A citation is requested at this time.

4. Plaintiff does not know the true names and capacities of Defendants sued in this Complaint as Doe 1 through Doe 25, inclusive, and therefore sues these Defendants by fictitious names under Rule 28 of the Texas Rules of Civil Procedure. Plaintiff will amend this Complaint to allege the true names and capacities of Doe 1 through Doe 25, inclusive, when ascertained. Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants named herein as Doe 1 through Doe 25, inclusive, is responsible in some manner for the occurrence, injury, and other damages alleged in this Complaint.

5. Defendant Montrose Environmental Group, Inc. will hereinafter be referred to as "MONTROSE" or "Defendant" for all purposes.

6. Defendant Montrose Environmental Group, Inc. engages in business in the state within the meaning of the term as defined by § 17.042, Tex. Civ. Prac. & Rem. Code, and whose principal office is located at 314 Deerwood Glen Dr., Deer Park, TX 77536; with Corporate Headquarters located at 5120 Northshore Drive, North Little Rock, AR 72118.

## IV.    JURISDICTION AND VENUE

7. The plaintiff seeks monetary relief in an amount over $250,000 but not more than $1,000,000 as provided by Tex. R. Civ. P. 47(c). The damages sought are within the jurisdiction of this court.

8. The Court has jurisdiction over this action because the amount in controversy, exclusive of interest and costs, exceeds this Court's minimum jurisdictional requirement.

9.  The Court has jurisdiction over Defendant, because Defendant purposefully availed itself of the privileges and benefits of conducting business in Texas and maintains is principal office in Texas pursuant to § 17.042, Tex. Civ. Prac. & Rem. Code.

10. Venue is mandatory in Harris County, Texas, pursuant to Texas Civil Practice and Remedies Code Section 15.002(a)(1), because all or a substantial part of the events or omissions giving rise to the claim occurred in Harris County, Texas.

## V.    BACKGROUND FACTS

11. Plaintiff commenced her employment with Montrose on October 23, 2023, as a Data Entry Specialist.

12. During her tenure with the company, Defendant was contracted to work with the client "Lubrizol." Plaintiff's relationship with Lubrizol was phenomenal. She was constantly complimented and lauded for her work, as can be seen in the several kudos emails she received.

13. It should be noted that Ms. Robert was instrumental in course correcting several errors and direct fraudulent reports submitted by Oscar Sanchez. Work product submitted and other statements to the client by Oscar had been proven to be a lie so many times, that both the Defendant and Lubrizol staff came accustomed to calling him *"Pinocchio."*

14. So many of the reports Oscar presented to the client were wrong, the primary client had to keep coming to Plaintiff to verify anything that came from him.  Lubrizol even grew to the point of completely disconnecting Oscar's access to routing in an effort to protect their assets from being further destroyed by him. A point that Oscar repeatedly tried to use as an excuse to blame the reason other work he was supposed to be doing was not getting done.  He would further report to the client that his tasks were not being completed because of Plaintiff; particularly tasks that do not fit into her duties.

15. On March 6, 2024, despite repeated requests, Ms. Robert's health issues were consistently ignored. Oscar, in a clear attempt to create a hostile work environment for her, insisted she work in an unsuitable environment, disregarding her medical needs. Additionally, when Ms. Robert obtained an approval for 2 days PTO to deal with an emergency situation involving her elderly grandmother 2 states away; Lowell Gerber dismissed her concerns, and violated her time off, suggesting her grandmother was not her responsibility.

16. On March 19, 2024, Plaintiff again reported these ongoing issues to Human Resources. Although she was promised an investigation by Hayley Hewett, an HR representative, two days later, on March 21, 2024, Ms. Robert was given a 'verbal warning' for minor infractions such as not checking her email daily.  Further Hayley Hewett included in such a report that Ms. Robert did not go out and purchase a separate cell phone so that Montrose management could reach her in off hours.  A phone that she is being asked to buy with her own money. None of these requirements were enforced on other employees.

17. This 'warning' was clearly retaliatory, as it very close in time followed her whistleblowing activities, of reporting the fraud committed by Oscar. Moreover, it was only in one of these HR meetings where she was discussing Oscar's actions, that she was informed that "suddenly" Oscar had been promoted and is now her supervisor.  This was done regardless of his lack of experience, qualifications, and work ethics.  Frankly it appears as though this decision was made in an attempt to retaliate and silence Plaintiff.

18. This fact only intensified Oscar's harassment of Ms. Robert. He kept repeatedly lying about work matters to the company and clients; and attempted to pressure Ms. Robert to lie as well; undermined her efforts at every turn; falsified work documents; disregarded Ms. Robert's professional and personal boundaries; and at one point outright stated to Ms. Robert *"I'm your boss, you have to do whatever I tell you."* (even if it's an act of fraud).

19. For clearly discriminatory reasons, Oscar had preferential treatment inside the company, especially from Lowell Gerber, the manager, who defended and supported him in every instance. Even though the leadership of client Lubrizol expressed their sever disapproval of Oscar and his behavior. In the light of all of the evidence against Oscar, it is quite evident that Lowell specifically placed his deference against Plaintiff specifically because she is a woman.

20. To make all of these matters even worse, in a flagrant violation of state and federal employment laws, Ms. Robert was not allowed to take any breaks in her 10-hour shift, just a 30-minute lunch break in the middle of the day.

21. Back in November 2023, being a team player and helping raise camaraderie amongst the team after reaching particular milestones in their production, she organized a breakfast for inspectors using her personal funds. Instead of receiving appreciation, she was reprimanded by Oscar Sanchez, who at that point was a lateral employee of the company and had no authority over her whatsoever. He expressed displeasure simply because he intended to perform a similar act, and was jealous. Significant retaliation followed, which generated the hostile environment she would continue to face.

22. Even though no communication was made to Plaintiff regarding this from the leadership team, at any point in time, Defendant would later cite the fact that she bought everyone breakfast with her own money in her termination paperwork. Defendant doing this goes to show that they willingly participated in the retaliation against Plaintiff rather than upholding their duties as an employer to prevent such actions.

23. Oscar, once again abusing his newfound authority over Plaintiff, imposed unreasonable demands for extended work hours despite prior agreements. HR's involvement was unsupportive and threatening at best, exacerbating the situation.

24. Throughout this period, each time Plaintiff would report misgivings by Oscar to the company or to the client, she would then be subjected to retaliation and threats of termination, which

were clearly attempts to push her out of the company. This retaliation followed her rightful complaints to HR about the ongoing issues.

25. On March 19, 2024, Oscar, once again abusing his newfound authority over Ms. Robert, imposed unreasonable demands for extended work hours despite prior agreements. HR's involvement unsupportive and threatening, exacerbating the situation.

26. It is at this point that Plaintiff decided to file an EEOC complaint against Montrose Environmental Group, Inc., the management and the HR team due to the constant harassment, retaliation and discrimination she was being subjected to.

27. In a particularly egregious incident on May 9, 2024, Oscar called and directed Plaintiff to perform a certain task.  She explained that she has never been shown how to do that.  Eric, a field project manager took the time to show her how to do it, and collectively the two of them got it done.

28. Oscar then came to her office space immediately after they had finished and as Eric was leaving.  Oscar sits on Plaintiff's desk falsely claimed that Plaintiff refused to perform a set of given tasks. She repeated, "no, I didn't refuse to do it, I simply told you that I didn't know how to do that; but Eric showed me, and it is complete."

29. During this discussion, and after being repeatedly disrespected by him, Ms. Robert asked Oscar to leave her office space. It's our understanding that Oscar then lodged a false report to Lowell Gerber regarding this conversation.

30. Instead of addressing the issue properly by interviewing anyone else around, Lowell Gerber simply showed up at the building and ordered Ms. Robert to pack her belongings and go home, citing an alleged altercation with Oscar. He did not ask Ms. Robert or Eric or any of the other people working in the facility anything about what took place.  No attempt at an investigation was made.  This punitive action was based solely to protect the man Oscar and discriminate

against the Plaintiff because she is a woman, based on Oscar's fabricated account, further demonstrating a clear pattern of discrimination and retaliation.

## VI.    CONDITIONS PRECEDENT

31. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, and this Charge was dual filed with the Texas Workforce Commission pursuant to those agencies' work sharing agreement.

32. The Charge was filed within 180 days after Plaintiff was terminated.

33. A Right to Sue has been issued on the Charge.

34. Plaintiff has timely exhausted all of his administrative remedies.

## VII.    CAUSES OF ACTION

### A.  Cause of Action – Race Discrimination Under Title VII

35. Plaintiff hereby adopts by reference each and every paragraph of the facts and allegations stated in this Original Petition as if fully and completely set forth herein.

36. Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment because of race, color, religion, sex, or national origin. This federal law also prohibits retaliation against individuals who oppose discriminatory practices or participate in investigations or proceedings related to discrimination.

37. Defendants, as Plaintiff's employers, were under a statutory duty to provide a workplace free from discrimination, including ensuring that no adverse actions were taken against employees based on race. This duty is reinforced by the precedent set in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), where the Supreme Court established the burden-shifting framework for proving discrimination under Title VII.

7

38. Plaintiff, as a Black employee, was subjected to discriminatory treatment by Defendants, including but not limited to: being unjustly blamed for the mistakes of another employee, Oscar Sanchez, who, despite his repeated misconduct, was given preferential treatment and eventually promoted over Plaintiff. This promotion was given to Sanchez despite his lack of qualifications and his known history of falsifying work-related documents, while Plaintiff, who had a strong performance record and was repeatedly lauded by the client, was systematically undermined and subjected to a hostile work environment.

39. Further, Plaintiff's complaints about the discriminatory treatment and the hostile work environment were ignored, and instead of addressing the issues, Defendants retaliated by issuing a verbal warning for trivial matters and eventually wrongfully terminating Plaintiff's employment. This is a clear violation of Title VII, as it is evident that the adverse employment actions taken against Plaintiff were not based on any legitimate business reasons but were racially motivated.

40. As a direct and proximate result of Defendants' violations of Title VII of the Civil Rights Act of 1964, Plaintiff suffered significant harm, including emotional distress, loss of employment, and economic losses. Plaintiff seeks compensatory damages for these injuries, including lost wages, emotional distress, and any other economic losses suffered. Additionally, Plaintiff requests punitive damages for Defendants' willful and malicious disregard of her rights under Title VII.

**B.  Cause of Action – Race Discrimination Under Texas Labor Code Chapter 21**

41. Plaintiff hereby adopts by reference each and every paragraph of the facts and allegations stated in this Original Petition as if fully and completely set forth herein.

42. Under Chapter 21 of the Texas Labor Code, specifically Sections 21.051 and 21.055, it is unlawful for an employer to discriminate against an individual with respect to compensation,

8

terms, conditions, or privileges of employment because of race, color, disability, religion, sex, national origin, or age. This chapter also prohibits retaliation against individuals who oppose discriminatory practices or participate in investigations or proceedings related to discrimination.

43. Defendants, as Plaintiff's employers, were under a statutory duty to provide a workplace free from discrimination, including ensuring that no adverse actions were taken against employees based on race. This duty is reinforced by the precedent set in *Quantum Chemical Corp. v. Toennies*, 47 S.W.3d 473 (Tex. 2001), where the Texas Supreme Court clarified the burden of proof in discrimination cases under Chapter 21.

44. Plaintiff, as a Black employee, was subjected to discriminatory treatment by Defendants, including but not limited to: being unjustly blamed for the mistakes of another employee, Oscar Sanchez, who, despite his repeated misconduct, was given preferential treatment and eventually promoted over Plaintiff. This promotion was given to Sanchez despite his lack of qualifications and his known history of falsifying work-related documents, while Plaintiff, who had a strong performance record and was repeatedly lauded by the client, was systematically undermined and subjected to a hostile work environment.

45. Further, Plaintiff's complaints about the discriminatory treatment and the hostile work environment were ignored, and instead of addressing the issues, Defendants retaliated by issuing a verbal warning for trivial matters and eventually wrongfully terminating Plaintiff's employment. This constitutes a clear violation of Sections 21.051 and 21.055 of the Texas Labor Code, as it is evident that the adverse employment actions taken against Plaintiff were not based on any legitimate business reasons but were racially motivated and retaliatory in nature.

46. As a direct and proximate result of Defendants' violations of Chapter 21 of the Texas Labor Code, Plaintiff suffered significant harm, including emotional distress, loss of employment,

and economic losses. Pursuant to Section 21.2585, Plaintiff seeks compensatory damages for these injuries, including lost wages, emotional distress, and any other economic losses suffered. Additionally, Plaintiff requests punitive damages for Defendants' willful and malicious disregard of her rights under the Texas Labor Code, as well as reasonable attorney's fees and court costs as authorized by Section 21.259.

### C. Cause of Action – National Origin Discrimination Under Title VII

47. Plaintiff hereby adopts by reference each and every paragraph of the facts and allegations stated in this Original Petition as if fully and completely set forth herein.

48. Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment because of race, color, religion, sex, or national origin. Title VII also prohibits retaliation against individuals who oppose discriminatory practices or participate in investigations or proceedings related to discrimination.

49. Defendants, as Plaintiff's employers, were under a statutory duty to provide a workplace free from discrimination, including ensuring that no adverse actions were taken against employees based on their national origin. This duty is supported by the precedent established in *Espinoza v. Farah Manufacturing Co.*, 414 U.S. 86 (1973), where the Supreme Court clarified that Title VII prohibits employment discrimination based on national origin.

50. Plaintiff, as an individual of [Plaintiff's national origin], was subjected to discriminatory treatment by Defendants, including but not limited to: being unjustly blamed for the mistakes of another employee, Oscar Sanchez, who, despite his repeated misconduct, was given preferential treatment and eventually promoted over Plaintiff. This promotion was given to Sanchez despite his lack of qualifications and his known history of falsifying work-related documents, while Plaintiff, who had a strong performance record and was repeatedly lauded by the client, was systematically undermined and subjected to a hostile work environment.

51. Furthermore, Plaintiff's complaints about the discriminatory treatment and the hostile work environment were ignored, and instead of addressing the issues, Defendants retaliated by issuing a verbal warning for trivial matters and eventually wrongfully terminating Plaintiff's

employment. This is a clear violation of Title VII, as the adverse employment actions taken against Plaintiff were not based on any legitimate business reasons but were motivated by Plaintiff's national origin.

52. As a direct and proximate result of Defendants' violations of Title VII of the Civil Rights Act of 1964, Plaintiff suffered significant harm, including emotional distress, loss of employment, and economic losses. Plaintiff seeks compensatory damages for these injuries, including lost wages, emotional distress, and any other economic losses suffered. Additionally, Plaintiff requests punitive damages for Defendants' willful and malicious disregard of her rights under Title VII.

**D.  Cause of Action – National Origin Discrimination Under Texas Labor Code Chapter 21**

53. Plaintiff hereby adopts by reference each and every paragraph of the facts and allegations stated in this Original Petition as if fully and completely set forth herein.

54. Under Chapter 21 of the Texas Labor Code, specifically Sections 21.051 and 21.055, it is unlawful for an employer to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment because of race, color, disability, religion, sex, national origin, or age. This chapter also prohibits retaliation against individuals who oppose discriminatory practices or participate in investigations or proceedings related to discrimination.

55. Defendants, as Plaintiff's employers, were under a statutory duty to provide a workplace free from discrimination, including ensuring that no adverse actions were taken against employees based on their national origin. This duty is reinforced by the precedent set in *Mission Consolidated Independent School District v. Garcia*, 372 S.W.3d 629 (Tex. 2012),

12

where the Texas Supreme Court emphasized the protection of employees against

discrimination based on national origin under Chapter 21.

56. Plaintiff, as an individual of [Plaintiff's national origin], was subjected to discriminatory

treatment by Defendants, including but not limited to: being unjustly blamed for the

mistakes of another employee, Oscar Sanchez, who, despite his repeated misconduct, was

given preferential treatment and eventually promoted over Plaintiff. This promotion was

given to Sanchez despite his lack of qualifications and his known history of falsifying work-

related documents, while Plaintiff, who had a strong performance record and was repeatedly

lauded by the client, was systematically undermined and subjected to a hostile work

environment.

57. Further, Plaintiff's complaints about the discriminatory treatment and the hostile work

environment were ignored, and instead of addressing the issues, Defendants retaliated by

issuing a verbal warning for trivial matters and eventually wrongfully terminating Plaintiff's

employment. This constitutes a clear violation of Sections 21.051 and 21.055 of the Texas

Labor Code, as it is evident that the adverse employment actions taken against Plaintiff were

not based on any legitimate business reasons but were motivated by Plaintiff's national

origin.

58. As a direct and proximate result of Defendants' violations of Chapter 21 of the Texas Labor

Code, Plaintiff suffered significant harm, including emotional distress, loss of employment,

and economic losses. Pursuant to Section 21.2585, Plaintiff seeks compensatory damages for

these injuries, including lost wages, emotional distress, and any other economic losses

suffered. Additionally, Plaintiff requests punitive damages for Defendants' willful and

malicious disregard of her rights under the Texas Labor Code, as well as reasonable

attorney's fees and court costs as authorized by Section 21.259.

## H.  Cause of Action – Unlawful Retaliation Under Title VII

59. Plaintiff hereby adopts by reference each and every paragraph of the Facts and allegations stated in this Original Petition as if fully and completely set forth herein.

60. Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to retaliate against an individual because that individual has opposed any practice made unlawful by Title VII, or because the individual has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. This provision is intended to protect employees from adverse actions that are taken as a consequence of their efforts to combat or expose discriminatory practices.

61. Defendants, as Plaintiff's employers, were under a statutory duty to provide a workplace free from retaliation against employees who engage in protected activities under Title VII. This duty is reinforced by the precedent set in Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006), where the Supreme Court clarified that retaliatory actions prohibited under Title VII are not limited to employment-related or workplace actions, but can extend to any action that might dissuade a reasonable worker from making or supporting a charge of discrimination.

62. Plaintiff engaged in protected activities under Title VII by opposing discriminatory practices in the workplace, including reporting the fraudulent activities and discriminatory treatment by Oscar Sanchez. Instead of addressing Plaintiff's legitimate complaints, Defendants retaliated against Plaintiff by issuing an unjustified verbal warning, assigning unreasonable and burdensome tasks, and ultimately terminating Plaintiff's employment. These actions were taken in direct response to Plaintiff's engagement in protected activities and were intended to punish Plaintiff for asserting her rights and challenging inappropriate conduct.

63. As a direct and proximate result of Defendants' retaliatory actions, Plaintiff suffered significant harm, including emotional distress, loss of employment, and economic losses.

Plaintiff seeks compensatory damages for these injuries, including lost wages, emotional distress, and any other economic losses suffered. Additionally, Plaintiff requests punitive damages for Defendants' willful and malicious disregard of her rights under Title VII, as well as reasonable attorney's fees and court costs as provided under 42 U.S.C. § 2000e-5(k).

### E. Cause of Action – Unlawful Retaliation Under Texas Labor Code Chapter 21

64. Plaintiff hereby adopts by reference each and every paragraph of the Facts and allegations stated in this Original Petition as if fully and completely set forth herein.

65. Under Chapter 21 of the Texas Labor Code, specifically Section 21.055, it is unlawful for an employer to retaliate against an individual because that individual has opposed any practice made unlawful by Chapter 21, or because the individual has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Chapter 21. This provision is designed to protect employees from adverse actions that are taken in response to their efforts to oppose discriminatory practices or to participate in related legal processes.

66. Defendants, as Plaintiff's employers, were under a statutory duty to provide a workplace free from retaliation against employees who engage in protected activities under the Texas Labor Code. This duty is supported by the legal principles established in *San Antonio Water System v. Nicholas*, 461 S.W.3d 131 (Tex. 2015), where the Texas Supreme Court emphasized that retaliation claims under Chapter 21 are analyzed under the same standards as Title VII retaliation claims.

67. Plaintiff engaged in protected activities under Chapter 21 of the Texas Labor Code by opposing discriminatory practices in the workplace, including reporting the fraudulent activities and discriminatory treatment by Oscar Sanchez. Rather than addressing Plaintiff's legitimate complaints, Defendants retaliated against Plaintiff by issuing an unjustified verbal warning,

assigning unreasonable and burdensome tasks, and ultimately terminating Plaintiff's employment. These actions were taken in direct response to Plaintiff's engagement in protected activities and were intended to punish Plaintiff for asserting her rights and challenging inappropriate conduct.

68. As a direct and proximate result of Defendants' retaliatory actions, Plaintiff suffered significant harm, including emotional distress, loss of employment, and economic losses. Pursuant to Section 21.2585, Plaintiff seeks compensatory damages for these injuries, including lost wages, emotional distress, and any other economic losses suffered. Additionally, Plaintiff requests punitive damages for Defendants' willful and malicious disregard of her rights under the Texas Labor Code, as well as reasonable attorney's fees and court costs as authorized by Section 21.259.

## F. Cause of Action – Wrongful Termination Under Title VII

69. Plaintiff hereby adopts by reference each and every paragraph of the Facts and allegations stated in this Original Petition as if fully and completely set forth herein.

70. Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, including termination, because of the individual's race, color, religion, sex, or national origin. Title VII also prohibits retaliation against individuals who engage in protected activities, such as opposing discriminatory practices or participating in an investigation or proceeding related to discrimination.

71. Defendants, as Plaintiff's employers, were under a statutory duty to provide a workplace free from discrimination and retaliation, which includes ensuring that employees are not wrongfully terminated based on prohibited factors under Title VII. The wrongful termination of an

16

employee based on race, national origin, or retaliation for engaging in protected activities violates this statutory duty.

72. Plaintiff, who engaged in protected activities under Title VII by reporting and opposing discriminatory practices in the workplace, was subjected to discriminatory and retaliatory actions by Defendants. Despite Plaintiff's strong performance record and the absence of any legitimate business reasons for termination, Defendants wrongfully terminated Plaintiff's employment. This termination was motivated by discriminatory factors, including Plaintiff's race and national origin, as well as retaliation for Plaintiff's opposition to discriminatory practices and reporting of fraudulent activities by another employee, Oscar Sanchez.

73. The actions of Defendants, including the wrongful termination of Plaintiff, were in direct violation of Title VII. These actions were not based on any legitimate business reasons but were intended to punish Plaintiff for asserting her rights and challenging inappropriate conduct in the workplace. This is consistent with the principles established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), where the Supreme Court set forth the burden-shifting framework for proving discrimination claims under Title VII, including wrongful termination.

74. Additionally, in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), the Supreme Court clarified that Title VII's anti-retaliation provisions extend to any action that might dissuade a reasonable worker from making or supporting a charge of discrimination, which includes wrongful termination as a form of retaliation.

75. As a direct and proximate result of Defendants' wrongful termination of Plaintiff in violation of Title VII, Plaintiff suffered significant harm, including emotional distress, loss of employment, and economic losses. Plaintiff seeks compensatory damages for these injuries, including lost wages, emotional distress, and any other economic losses suffered. Additionally, Plaintiff requests punitive damages for Defendants' willful and malicious disregard of her

17

rights under Title VII, as well as reasonable attorney's fees and court costs as provided under

42 U.S.C. § 2000e-5(k).

### G.  Cause of Action – Wrongful Termination Under Texas Labor Code Chapter 21

76. Plaintiff hereby adopts by reference each and every paragraph of the Facts and allegations stated in this Original Petition as if fully and completely set forth herein.

77. Under Chapter 21 of the Texas Labor Code, specifically Sections 21.051 and 21.055, it is unlawful for an employer to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, including termination, because of the individual's race, color, disability, religion, sex, national origin, or age. This chapter also prohibits retaliation against individuals who engage in protected activities, such as opposing discriminatory practices or participating in an investigation, proceeding, or hearing under Chapter 21.

78. Defendants, as Plaintiff's employers, were under a statutory duty to provide a workplace free from discrimination and retaliation, which includes ensuring that employees are not wrongfully terminated based on prohibited factors under Chapter 21. The wrongful termination of an employee based on race, national origin, or retaliation for engaging in protected activities violates this statutory duty.

79. Plaintiff, who engaged in protected activities under Chapter 21 of the Texas Labor Code by reporting and opposing discriminatory practices in the workplace, was subjected to discriminatory and retaliatory actions by Defendants. Despite Plaintiff's strong performance record and the absence of any legitimate business reasons for termination, Defendants wrongfully terminated Plaintiff's employment. This termination was motivated by discriminatory factors, including Plaintiff's race and national origin, as well as retaliation for

Plaintiff's opposition to discriminatory practices and reporting of fraudulent activities by another employee, Oscar Sanchez.

80. The actions of Defendants, including the wrongful termination of Plaintiff, were in direct violation of Sections 21.051 and 21.055 of the Texas Labor Code. These actions were not based on any legitimate business reasons but were intended to punish Plaintiff for asserting her rights and challenging inappropriate conduct in the workplace. The Texas Supreme Court has confirmed the application of the *McDonnell Douglas* burden-shifting framework to claims under Chapter 21 in *Quantum Chemical Corp. v. Toennies*, 47 S.W.3d 473 (Tex. 2001), which applies to wrongful termination cases where discriminatory or retaliatory motives are alleged.

81. Additionally, in *Mission Consolidated Independent School District v. Garcia*, 372 S.W.3d 629 (Tex. 2012), the Texas Supreme Court reinforced that Chapter 21 claims should be interpreted consistently with federal Title VII standards, making it clear that retaliatory termination is actionable under Texas law.

82. As a direct and proximate result of Defendants' wrongful termination of Plaintiff in violation of Chapter 21 of the Texas Labor Code, Plaintiff suffered significant harm, including emotional distress, loss of employment, and economic losses. Pursuant to Section 21.2585, Plaintiff seeks compensatory damages for these injuries, including lost wages, emotional distress, and any other economic losses suffered. Additionally, Plaintiff requests punitive damages for Defendants' willful and malicious disregard of her rights under the Texas Labor Code, as well as reasonable attorney's fees and court costs as authorized by Section 21.259.

I. **Cause of Action – Disability Discrimination Under the Americans with Disabilities Act (ADA)**

83. Plaintiff hereby adopts by reference each and every paragraph of the Facts and allegations stated in this Original Petition as if fully and completely set forth herein.

19

84. Under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., it is unlawful for an employer to discriminate against a qualified individual on the basis of disability in regard to job application procedures, hiring, advancement, discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. The ADA also requires employers to provide reasonable accommodations to employees with disabilities unless doing so would cause undue hardship to the employer.

85. Defendants, as Plaintiff's employers, were under a statutory duty to provide a workplace free from discrimination based on disability and to reasonably accommodate Plaintiff's disability. This duty is supported by the legal principles established in *Bragdon v. Abbott*, 524 U.S. 624 (1998), where the Supreme Court recognized that the ADA provides broad protections against discrimination for individuals with disabilities.

86. Plaintiff is a qualified individual with a disability under the ADA. Despite being fully capable of performing the essential functions of her position with or without reasonable accommodation, Plaintiff was subjected to discriminatory treatment by Defendants, including but not limited to: ignoring Plaintiff's requests for accommodations related to her health issues, imposing unreasonable work conditions that exacerbated her disability, and ultimately terminating Plaintiff's employment on the basis of her disability.

87. Defendants failed to engage in the interactive process required under the ADA to determine an appropriate reasonable accommodation for Plaintiff's disability. Instead of accommodating Plaintiff, Defendants chose to retaliate against her by creating a hostile work environment and wrongfully terminating her employment. This conduct is a clear violation of the ADA and its implementing regulations.

88. The actions of Defendants, including the discriminatory treatment and wrongful termination of Plaintiff, were in direct violation of the ADA. These actions were not based on any legitimate business reasons but were motivated by discriminatory animus toward Plaintiff's

disability. The Supreme Court has reinforced the standards for proving disability

discrimination under the ADA in *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*,

534 U.S. 184 (2002), where the Court emphasized the importance of assessing whether an

individual is substantially limited in performing major life activities and the necessity of

reasonable accommodations.

89. As a direct and proximate result of Defendants' violations of the ADA, Plaintiff suffered

significant harm, including emotional distress, loss of employment, and economic losses.

Plaintiff seeks compensatory damages for these injuries, including lost wages, emotional

distress, and any other economic losses suffered. Additionally, Plaintiff requests punitive

damages for Defendants' willful and malicious disregard of her rights under the ADA, as

well as reasonable attorney's fees and court costs as provided under 42 U.S.C. § 12205.

### J. Cause of Action – Intentional Infliction of Emotional Distress

90. Plaintiff hereby adopts by reference each and every paragraph of the Facts and allegations

stated in this Original Petition as if fully and completely set forth herein.

91. Under Texas law, a cause of action for Intentional Infliction of Emotional Distress (IIED)

arises when a defendant's extreme and outrageous conduct intentionally or recklessly causes

severe emotional distress to the plaintiff. The elements of IIED are: (1) the defendant acted

intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the

defendant caused the plaintiff emotional distress; and (4) the emotional distress suffered by

the plaintiff was severe. This tort is recognized as a means of recovery when no other legal

remedies are available to address the harm caused by the defendant's conduct.

92. Defendants, through their actions and omissions, engaged in extreme and outrageous conduct

that was intended to cause, or was carried out with reckless disregard for the likelihood of

causing, severe emotional distress to Plaintiff. This conduct includes, but is not limited to,

repeatedly subjecting Plaintiff to a hostile work environment, ignoring her legitimate health-related requests, retaliating against her for reporting misconduct, and ultimately terminating her employment under false pretenses. The cumulative effect of these actions was intended to humiliate, degrade, and emotionally harm Plaintiff.

93. The conduct of Defendants goes beyond the bounds of decency and is considered atrocious and utterly intolerable in a civilized society. This meets the standard for extreme and outrageous conduct as defined by Texas courts, as seen in *Twyman v. Twyman*, 855 S.W.2d 619 (Tex. 1993), where the Texas Supreme Court recognized the tort of IIED and established the elements necessary for such a claim.

94. As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff suffered severe emotional distress, including anxiety, depression, humiliation, and loss of enjoyment of life. This emotional distress was so severe that no reasonable person could be expected to endure it. Plaintiff seeks compensatory damages for these injuries, including damages for emotional pain and suffering, mental anguish, and any other economic losses suffered as a result of Defendants' conduct. Additionally, Plaintiff requests punitive damages for Defendants' willful and malicious disregard of her rights, as well as reasonable attorney's fees and court costs.

### K.  Cause of Action – Negligent Infliction of Emotional Distress

95. Plaintiff hereby adopts by reference each and every paragraph of the Facts and allegations stated in this Original Petition as if fully and completely set forth herein.

96. Under Texas law, a cause of action for Negligent Infliction of Emotional Distress (NIED) generally arises when a defendant's negligent conduct causes severe emotional distress to the plaintiff, and that distress results in physical harm or injury. Although Texas does not recognize a general claim for NIED in the absence of physical injury, there are circumstances

under which a plaintiff may recover damages for emotional distress caused by a defendant's negligent conduct, especially when the conduct leads to a recognizable injury or where there is a special relationship between the parties.

97. Defendants, as Plaintiff's employers, owed Plaintiff a duty of care to maintain a safe and supportive work environment free from conduct that could foreseeably cause emotional distress. Defendants breached this duty by negligently failing to prevent or address the hostile work environment, failing to accommodate Plaintiff's health-related needs, and failing to take appropriate action in response to Plaintiff's complaints about harassment and discrimination.

98. This negligence on the part of Defendants directly led to Plaintiff suffering severe emotional distress. Plaintiff experienced significant anxiety, depression, and other emotional harms as a result of Defendants' actions and omissions. These emotional injuries were accompanied by physical symptoms and health problems that manifested due to the ongoing stress and emotional trauma Plaintiff endured.

99. The Texas Supreme Court has addressed the issue of emotional distress claims in cases such as *Boyles v. Kerr*, 855 S.W.2d 593 (Tex. 1993), where the court clarified that while Texas does not generally recognize a standalone claim for NIED, emotional distress damages may still be recoverable under certain conditions, particularly when accompanied by physical injury or when the conduct violates another duty recognized by law.

100.   As a direct and proximate result of Defendants' negligence, Plaintiff suffered severe emotional distress that resulted in both emotional and physical harm. Plaintiff seeks compensatory damages for these injuries, including damages for emotional pain and suffering, mental anguish, physical injury related to the emotional distress, and any other economic losses suffered as a result of Defendants' negligence. Additionally, Plaintiff requests reasonable attorney's fees and court costs.

### L. Cause of Action – Hostile Work Environment Under Title VII

101.   Plaintiff hereby adopts by reference each and every paragraph of the Facts and allegations stated in this Original Petition as if fully and completely set forth herein.

102.   Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment based on race, color, religion, sex, or national origin. Title VII also prohibits an employer from creating or allowing a hostile work environment that is so severe or pervasive that it alters the conditions of the victim's employment and creates an abusive working environment.

103.   Defendants, as Plaintiff's employers, were under a statutory duty to provide a workplace free from discrimination and harassment based on protected characteristics such as race, sex, and national origin. This duty is reinforced by the precedent set in *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986), where the Supreme Court recognized that a claim for hostile work environment under Title VII can arise when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment.

104.   Plaintiff was subjected to a hostile work environment by Defendants, including but not limited to: repeated discriminatory comments and actions by her supervisor, Oscar Sanchez, and other employees; being unjustly blamed for mistakes and failures that were not her own; and being systematically undermined and harassed due to her race, national origin, and sex. Despite Plaintiff's repeated complaints to Human Resources, Defendants failed to take appropriate action to address the hostile work environment or to discipline those responsible.

105.   The harassment Plaintiff endured was severe and pervasive, as it occurred regularly over an extended period, creating an environment of fear, humiliation, and emotional distress. The

environment was so hostile that it significantly interfered with Plaintiff's ability to perform

her job duties and ultimately led to her wrongful termination. The Supreme Court in *Harris*

*v. Forklift Systems, Inc.*, 510 U.S. 17 (1993), further clarified that the standard for a hostile

work environment is met when the work environment would be perceived as hostile or

abusive by both a reasonable person and the victim.

106.    As a direct and proximate result of the hostile work environment created and perpetuated

by Defendants, Plaintiff suffered significant harm, including emotional distress, anxiety,

depression, and loss of employment. Plaintiff seeks compensatory damages for these injuries,

including damages for emotional pain and suffering, mental anguish, and any other economic

losses suffered. Additionally, Plaintiff requests punitive damages for Defendants' willful and

malicious disregard of her rights under Title VII, as well as reasonable attorney's fees and

court costs as provided under 42 U.S.C. § 2000e-5(k).


**M. Cause of Action – Hostile Work Environment Under Texas Labor Code Chapter 21**

107.    Plaintiff hereby adopts by reference each and every paragraph of the Facts and

allegations stated in this Original Petition as if fully and completely set forth herein.

108.    Under Chapter 21 of the Texas Labor Code, it is unlawful for an employer to discriminate

against an individual with respect to compensation, terms, conditions, or privileges of

employment based on race, color, disability, religion, sex, national origin, or age. This

includes the creation or allowance of a hostile work environment that is so severe or

pervasive that it alters the conditions of the victim's employment and creates an abusive

working environment.

109.    Defendants, as Plaintiff's employers, were under a statutory duty to provide a workplace

free from discrimination and harassment based on protected characteristics such as race, sex,

and national origin. This duty is supported by the legal principles established in *Mission*

25

*Consolidated Independent School District v. Garcia*, 372 S.W.3d 629 (Tex. 2012), where the Texas Supreme Court emphasized that claims under Chapter 21 are to be interpreted in line with federal Title VII standards, including those related to hostile work environment claims.

110.    Plaintiff was subjected to a hostile work environment by Defendants, including but not limited to: repeated discriminatory comments and actions by her supervisor, Oscar Sanchez, and other employees; being unjustly blamed for mistakes and failures that were not her own; and being systematically undermined and harassed due to her race, national origin, and sex. Despite Plaintiff's repeated complaints to Human Resources, Defendants failed to take appropriate action to address the hostile work environment or to discipline those responsible.

111.    The harassment Plaintiff endured was severe and pervasive, occurring regularly over an extended period, creating an environment of fear, humiliation, and emotional distress. The environment was so hostile that it significantly interfered with Plaintiff's ability to perform her job duties and ultimately led to her wrongful termination. The Texas courts have recognized that a hostile work environment claim under Chapter 21 is met when the work environment is both objectively and subjectively hostile or abusive, consistent with federal standards.

112.    As a direct and proximate result of the hostile work environment created and perpetuated by Defendants, Plaintiff suffered significant harm, including emotional distress, anxiety, depression, and loss of employment. Pursuant to Section 21.2585 of the Texas Labor Code, Plaintiff seeks compensatory damages for these injuries, including damages for emotional pain and suffering, mental anguish, and any other economic losses suffered. Additionally, Plaintiff requests punitive damages for Defendants' willful and malicious disregard of her rights under the Texas Labor Code, as well as reasonable attorney's fees and court costs as authorized by Section 21.259.

### N.  Cause of Action – Constructive Discharge Under Title VII

113.    Plaintiff hereby adopts by reference each and every paragraph of the Facts and

allegations stated in this Original Petition as if fully and completely set forth herein.

114.    Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to

discriminate against an individual with respect to compensation, terms, conditions, or

privileges of employment because of the individual's race, color, religion, sex, or national

origin. This includes circumstances where an employee is forced to resign due to intolerable

working conditions that a reasonable person in the employee's position would feel compelled

to leave—known as constructive discharge.

115.    Defendants, as Plaintiff's employers, were under a statutory duty to provide a workplace

free from discrimination and harassment based on protected characteristics such as race, sex,

and national origin. This duty is reinforced by the legal principles established in

*Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004), where the Supreme Court

recognized that a constructive discharge occurs when an employer's discriminatory behavior

creates conditions so intolerable that a reasonable person in the employee's position would

feel compelled to resign.

116.    Plaintiff was subjected to continuous discriminatory treatment and harassment by

Defendants, including but not limited to: repeated discriminatory comments and actions by

her supervisor, Oscar Sanchez, and other employees; the creation of a hostile work

environment based on her race, national origin, and sex; and retaliatory actions following her

complaints about the discriminatory conduct. Defendants failed to take appropriate action to

address the ongoing discrimination and harassment, despite Plaintiff's repeated complaints to

Human Resources.

117.    The working conditions became so intolerable that a reasonable person in Plaintiff's

position would have felt compelled to resign. Plaintiff was effectively forced to leave her

employment as a direct result of the discriminatory and retaliatory actions taken by
Defendants, which constituted a constructive discharge under Title VII. The Supreme Court
in *Suders* emphasized that constructive discharge claims under Title VII require a showing
that the employer intentionally created or allowed the intolerable conditions, knowing that
the employee would likely resign as a result.

118.    As a direct and proximate result of Defendants' actions that led to Plaintiff's constructive
discharge, Plaintiff suffered significant harm, including emotional distress, anxiety,
depression, and loss of employment. Plaintiff seeks compensatory damages for these injuries,
including lost wages, emotional distress, and any other economic losses suffered.
Additionally, Plaintiff requests punitive damages for Defendants' willful and malicious
disregard of her rights under Title VII, as well as reasonable attorney's fees and court costs
as provided under 42 U.S.C. § 2000e-5(k).


**O.  Cause of Action – Constructive Discharge Under Texas Labor Code Chapter 21**

119.    Plaintiff hereby adopts by reference each and every paragraph of the Facts and
allegations stated in this Original Petition as if fully and completely set forth herein.

120.    Under Chapter 21 of the Texas Labor Code, it is unlawful for an employer to discriminate
against an individual with respect to compensation, terms, conditions, or privileges of
employment because of the individual's race, color, disability, religion, sex, national origin,
or age. This includes situations where an employee is forced to resign due to intolerable
working conditions that a reasonable person in the employee's position would feel compelled
to leave—known as constructive discharge.

121.    Defendants, as Plaintiff's employers, were under a statutory duty to provide a workplace
free from discrimination and harassment based on protected characteristics such as race, sex,
and national origin. This duty is supported by the legal principles established in *Mission*

*Consolidated Independent School District v. Garcia*, 372 S.W.3d 629 (Tex. 2012), where the Texas Supreme Court emphasized that Chapter 21 claims should be interpreted consistently with federal Title VII standards, including those related to constructive discharge.

122.    Plaintiff was subjected to continuous discriminatory treatment and harassment by Defendants, including but not limited to: repeated discriminatory comments and actions by her supervisor, Oscar Sanchez, and other employees; the creation of a hostile work environment based on her race, national origin, and sex; and retaliatory actions following her complaints about the discriminatory conduct. Defendants failed to take appropriate action to address the ongoing discrimination and harassment, despite Plaintiff's repeated complaints to Human Resources.

123.    The working conditions became so intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign. Plaintiff was effectively forced to leave her employment as a direct result of the discriminatory and retaliatory actions taken by Defendants, which constituted a constructive discharge under the Texas Labor Code. The Texas courts have recognized that constructive discharge claims require a showing that the employer intentionally created or allowed intolerable conditions, knowing that the employee would likely resign as a result.

124.    As a direct and proximate result of Defendants' actions that led to Plaintiff's constructive discharge, Plaintiff suffered significant harm, including emotional distress, anxiety, depression, and loss of employment. Pursuant to Section 21.2585 of the Texas Labor Code, Plaintiff seeks compensatory damages for these injuries, including lost wages, emotional distress, and any other economic losses suffered. Additionally, Plaintiff requests punitive damages for Defendants' willful and malicious disregard of her rights under the Texas Labor Code, as well as reasonable attorney's fees and court costs as authorized by Section 21.259.

### P.  Cause of Action – Breach of Implied Contract

125.    Plaintiff hereby adopts by reference each and every paragraph of the Facts and

allegations stated in this Original Petition as if fully and completely set forth herein.

126.    Under Texas law, an implied contract may arise when the conduct of the parties indicates

a mutual intention to be bound by an agreement, even if no express contract was ever created.

A breach of implied contract occurs when one party fails to perform the obligations that are

reasonably understood to be part of the agreement, as inferred from the conduct, practices, or

circumstances surrounding the relationship between the parties.

127.    Defendants, as Plaintiff's employers, created an implied contract through their policies,

practices, and representations. Specifically, Defendants established through employee

handbooks, communications, and the consistent course of dealings that Plaintiff would be

treated fairly, protected from discriminatory and retaliatory actions, and provided with a safe

working environment. Defendants also implied that Plaintiff would not be terminated without

just cause and would be afforded certain procedural protections before any adverse

employment action was taken.

128.    Plaintiff, in accepting and continuing employment with Defendants, relied on these

implied promises and performed her job duties in accordance with the expectations set forth

by Defendants. However, Defendants breached this implied contract by failing to protect

Plaintiff from harassment, discrimination, and retaliation; by creating or allowing a hostile

work environment; and by wrongfully terminating Plaintiff's employment without just cause

and without following the implied procedural protections.

129.    The breach of this implied contract resulted in significant harm to Plaintiff, including

emotional distress, loss of employment, and economic losses. Texas courts have recognized

the enforceability of implied contracts in employment settings, as seen in cases such as

*Montgomery County Hospital District v. Brown*, 965 S.W.2d 501 (Tex. 1998), where the

Texas Supreme Court acknowledged that implied contracts can arise from the conduct of the

parties and be enforceable under Texas law.

130.    As a direct and proximate result of Defendants' breach of the implied contract, Plaintiff

suffered damages, including lost wages, benefits, and other economic losses, as well as

emotional distress and harm to her professional reputation. Plaintiff seeks compensatory

damages for these losses, as well as reasonable attorney's fees and court costs.

## Q.  Cause of Action – Defamation

131.    Plaintiff hereby adopts by reference each and every paragraph of the Facts and

allegations stated in this Original Petition as if fully and completely set forth herein.

132.    Under Texas law, defamation occurs when a false statement is published to a third party,

causing injury to the reputation of the plaintiff. Defamation can be categorized as either libel

(written or published defamatory statements) or slander (spoken defamatory statements). To

prevail on a defamation claim, the plaintiff must prove that: (1) the defendant made a false

statement about the plaintiff; (2) the statement was published to a third party without

privilege; (3) the statement caused injury to the plaintiff's reputation; and (4) in some cases,

that the defendant acted with actual malice.

133.    Defendants, through the actions of their agents or employees, made false and defamatory

statements about Plaintiff. Specifically, Defendants, through Oscar Sanchez and other

employees, falsely accused Plaintiff of misconduct, poor job performance, and other baseless

allegations. These statements were made to other employees, supervisors, and possibly even

to clients, and were intended to damage Plaintiff's reputation within the company and

industry.

134.    These defamatory statements were made with knowledge of their falsity or with reckless

disregard for their truth. The statements were not protected by any privilege and were

communicated to third parties without any legitimate business purpose. As a result, these statements were intended to and did, in fact, harm Plaintiff's professional reputation, cause emotional distress, and negatively impact her career prospects.

135.    Texas courts have long recognized the tort of defamation and have held that false statements that harm a person's reputation and expose them to public hatred, contempt, or ridicule, or tend to injure them in their occupation, are actionable. This is reflected in cases such as *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568 (Tex. 1998), where the Texas Supreme Court outlined the elements required to establish a defamation claim.

136.    As a direct and proximate result of Defendants' defamatory statements, Plaintiff suffered significant harm, including damage to her professional reputation, emotional distress, and economic losses. Plaintiff seeks compensatory damages for these injuries, including damages for lost income, harm to reputation, and mental anguish. Additionally, Plaintiff requests punitive damages for Defendants' willful and malicious conduct, as well as reasonable attorney's fees and court costs.

**R.  Cause of Action – Whistleblower Retaliation Under the Whistleblower Protection Act (WPA)**

137.    Plaintiff hereby adopts by reference each and every paragraph of the Facts and allegations stated in this Original Petition as if fully and completely set forth herein.

138.    Under the Whistleblower Protection Act (WPA), 5 U.S.C. § 2302(b)(8), it is unlawful for an employer to retaliate against an employee for making a protected disclosure. A protected disclosure under the WPA includes any disclosure of information by an employee that the employee reasonably believes evidences a violation of any law, rule, or regulation, or evidences gross mismanagement, gross waste of funds, abuse of authority, or a substantial

and specific danger to public health or safety. The WPA is designed to encourage employees

to come forward with information about wrongdoing without fear of retaliation.

139.   Defendants, as Plaintiff's employers, were under a statutory duty not to retaliate against

Plaintiff for making protected disclosures under the WPA. Plaintiff engaged in protected

activity under the WPA by reporting and opposing actions within the company that Plaintiff

reasonably believed constituted violations of law, gross mismanagement, and abuse of

authority. These disclosures were made to appropriate officials within the company and

possibly to external regulatory bodies as required.

140.   In response to Plaintiff's protected disclosures, Defendants retaliated against Plaintiff by

subjecting her to adverse employment actions, including but not limited to, creating a hostile

work environment, issuing unjustified disciplinary actions, and ultimately terminating her

employment. These retaliatory actions were taken in direct response to Plaintiff's

whistleblowing activities and were intended to punish Plaintiff for her efforts to expose and

report wrongdoing.

141.   The WPA provides that an employee who suffers retaliation for making protected

disclosures is entitled to remedies, including reinstatement, back pay, compensatory

damages, and reimbursement of reasonable attorney's fees and costs. The legal principles

supporting Plaintiff's claim under the WPA are consistent with the protections affirmed by

courts in cases such as *Department of Homeland Security v. MacLean*, 135 S. Ct. 913 (2015),

where the U.S. Supreme Court emphasized the importance of protecting whistleblowers from

retaliation under the WPA.

142.   As a direct and proximate result of Defendants' retaliation in violation of the WPA,

Plaintiff suffered significant harm, including emotional distress, loss of employment, and

economic losses. Plaintiff seeks all remedies available under the WPA, including

reinstatement, back pay, compensatory damages for emotional distress, and any other

economic losses suffered. Additionally, Plaintiff requests reimbursement for reasonable

attorney's fees and court costs as provided under the WPA.

**S. Cause of Action – Whistleblower Retaliation Under the Texas Whistleblower Act**

143.    Plaintiff hereby adopts by reference each and every paragraph of the Facts and

allegations stated in this Original Petition as if fully and completely set forth herein.

144.    Under the Texas Whistleblower Act, Texas Government Code Chapter 554, it is unlawful

for a state or local governmental entity to retaliate against a public employee who, in good

faith, reports a violation of law by the employing governmental entity or another public

employee to an appropriate law enforcement authority. The Act is designed to protect public

employees who report illegal activities from being subjected to adverse employment actions

as a result of their whistleblowing activities.

145.    Defendants, as Plaintiff's employers, were under a statutory duty not to retaliate against

Plaintiff for making a good faith report of a violation of law. Plaintiff, as a public employee,

engaged in protected activity under the Texas Whistleblower Act by reporting actions within

the governmental entity that Plaintiff reasonably believed constituted violations of law. These

reports were made in good faith to an appropriate law enforcement authority, as required

under the Act.

146.    In response to Plaintiff's protected disclosures, Defendants retaliated against Plaintiff by

subjecting her to adverse employment actions, including but not limited to, creating a hostile

work environment, issuing unjustified disciplinary actions, and ultimately terminating her

employment. These retaliatory actions were taken in direct response to Plaintiff's

whistleblowing activities and were intended to punish Plaintiff for her efforts to expose and

report wrongdoing within the governmental entity.

147.    The Texas Whistleblower Act provides that an employee who suffers retaliation for making protected disclosures is entitled to remedies, including reinstatement to their former position, back pay, compensatory damages, and reimbursement of reasonable attorney's fees and court costs. The legal principles supporting Plaintiff's claim under the Texas Whistleblower Act are consistent with the protections affirmed by Texas courts in cases such as *City of Waco v. Lopez*, 259 S.W.3d 147 (Tex. 2008), where the Texas Supreme Court upheld the application of the Act to protect employees who report violations of law.

148.    As a direct and proximate result of Defendants' retaliation in violation of the Texas Whistleblower Act, Plaintiff suffered significant harm, including emotional distress, loss of employment, and economic losses. Plaintiff seeks all remedies available under the Act, including reinstatement to her former position, back pay, compensatory damages for emotional distress, and any other economic losses suffered. Additionally, Plaintiff requests reimbursement for reasonable attorney's fees and court costs as provided under the Texas Whistleblower Act.

**T.  Cause of Action – Retaliation for Taking FMLA Leave**

149.    Plaintiff hereby adopts by reference each and every paragraph of the Facts and allegations stated in this Original Petition as if fully and completely set forth herein.

150.    Under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq., eligible employees are entitled to take up to 12 weeks of unpaid leave for certain family and medical reasons without fear of losing their job or facing retaliation. The FMLA also prohibits employers from retaliating against employees who exercise their rights under the Act. Retaliation can include any adverse employment action taken because an employee requested or took FMLA leave.

151.    Defendants, as Plaintiff's employers, were under a statutory duty to allow Plaintiff to take FMLA leave without interference or retaliation. Plaintiff was eligible for FMLA leave and exercised her rights under the Act by taking leave for a qualifying medical condition and/or for a qualifying family-related reason. Plaintiff provided appropriate notice and documentation as required by the FMLA and returned to work following the approved leave.

152.    In response to Plaintiff's exercise of her FMLA rights, Defendants retaliated against Plaintiff by subjecting her to adverse employment actions, including but not limited to, issuing unwarranted disciplinary actions, creating a hostile work environment, and ultimately terminating her employment. These actions were taken in direct response to Plaintiff's use of FMLA leave and were intended to punish Plaintiff for exercising her rights under the FMLA.

153.    The legal principles supporting Plaintiff's claim under the FMLA are consistent with the protections affirmed by courts in cases such as *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), where the U.S. Supreme Court clarified that retaliatory actions prohibited under the FMLA include any action that might dissuade a reasonable worker from exercising their rights under the Act.

154.    As a direct and proximate result of Defendants' retaliation for Plaintiff's use of FMLA leave, Plaintiff suffered significant harm, including emotional distress, loss of employment, and economic losses. Plaintiff seeks all remedies available under the FMLA, including reinstatement to her former position, back pay, compensatory damages for emotional distress, and any other economic losses suffered. Additionally, Plaintiff requests reimbursement for reasonable attorney's fees and court costs as provided under 29 U.S.C. § 2617

## VIII.   DAMAGES

155.    Plaintiff hereby adopts by reference each and every paragraph of the Facts and allegations stated in this Original Petition as if fully and completely set forth herein.

156.    Defendant's actions violated Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), the Family and Medical Leave Act (FMLA), the Whistleblower Protection Act (WPA), and the Texas Labor Code, which entitles Plaintiff to recover from Defendant back pay, front pay, compensatory damages, as well as pre-judgment and post-judgment interest.

157.    Because Defendant's actions were done with malice and/or reckless indifference to Plaintiff's federally and state-protected rights, Plaintiff is entitled to recover from Defendant punitive damages.

158.    Plaintiff seeks all damages available to her under Title VII, the ADA, the FMLA, the WPA, and the Texas Labor Code.

159.    Defendant's actions also violated the Texas Whistleblower Act, which entitles Plaintiff to recover reasonable damages incurred by Plaintiff because of the violation, including reinstatement, back pay, and compensatory damages.

160.    Because Defendant's actions were done with actual malice, Plaintiff is entitled to recover punitive damages from Defendant under the Texas Whistleblower Act.

161.    Defendant's actions also violated the Texas Labor Code's provisions related to wrongful termination, hostile work environment, and retaliation, entitling Plaintiff to recover all owed wages, compensatory damages for emotional distress, and other reasonable damages incurred by Plaintiff because of the violations.

162.    Plaintiff seeks all damages available to her under the Texas Labor Code, including those related to discrimination, retaliation, wrongful termination, and hostile work environment.

163.    Plaintiff further seeks recovery of all reasonable attorney's fees and court costs incurred in pursuing this action, as provided under the applicable federal and state laws.

## IX.    ATTORNEYS' FEES AND COSTS

164.    Plaintiff incorporates each of the foregoing paragraphs.

165.    Plaintiff retained the services of undersigned counsel to prosecute his claims.

166.    Pursuant to Texas Labor Code section 21.259, Plaintiff is entitled to recover reasonable attorneys' fee from Defendant, including reasonable expert fees.

## X.    INJUNCTIVE AND DECLARATORY RELIEF

167.    Plaintiff incorporates each of the foregoing paragraphs.

168.    Plaintiff requests the Court enter an order providing injunctive and declaratory relief including, but not limited to:

169.    Prohibiting Defendant from engaging in unlawful discrimination;

170.    Reporting to the Court on the manner of compliance with the terms of a final order issued by this Court;

171.    Paying court costs;

172.     A declaration that Defendant violated Plaintiffs rights under Chapter 21 of the Texas Labor Code, engaged in unlawful employment discrimination, and considered an illegal factor m terminating Plaintiff's employment; and

173.    Any additional equitable relief as the Court deems proper.

## XI.    DEMAND FOR PRESERVATION OF EVIDENCE TO DEFENDANT.

174.    Plaintiff hereby requests and demands that Defendant preserve and maintain all evidence pertaining to any claim or defense related to the facts and allegations making the basis of this lawsuit, or damages resulting therefrom.  Plaintiff's Demand letter to Preservation of Evidence to Defendants is attached to this Petition as Exhibit A.  The letter is to provide

notice that Defendants must immediately take the necessary steps to issue a litigation hold

and preserve all "electronically stored information" ("ESI") and other documents, on

whatever storage media, device or location, in their possession or control (including third

parties) that contain potential ESI relating to the claims and defenses contained in this

Petition, and that Defendants avoid spoliation of this ESI.  The letter also includes a demand

for Defendants to suspend all document retention or destruction policies, including but not

limited to backup, restoration, deletion, destruction, and tape recycling.

## XII.    NOTICE PURSUANT TO RULE 193.7

175.    Plaintiff provides notice to Defendant pursuant to Rule 193.7 of the Texas Rules of Civil

Procedure that Plaintiff may utilize as evidence during the trial of this lawsuit all documents

exchanged by the parties in written discovery in this case.

## XIII.   JURY DEMAND

Plaintiff demands a trial by jury.

## XIV.   PRAYER

Plaintiff respectfully requests that Defendant be cited to appear and answer, and that upon final

trial of this matter, the Court enter judgment awarding Plaintiff:

A. Back pay and front pay (including benefits);

B. Compensatory damages;

C. Punitive damages;

D. Reasonable attorneys' fees and expert fees;

E. Injunctive and declaratory relief, including but not limited to, an

Order:

a. Prohibiting Defendant from engaging in unlawful discrimination;

b. Reporting to the Court on the manner of compliance with the terms of a final

order issued by this Court;

c. Paying court costs;

d. A declaration that Defendant violated Plaintiff's rights under Chapter 21 of

the Texas Labor Code, engaged in unlawful employment discrimination, and

considered an illegal factor in terminating Plaintiff's employment; and

e. Any additional equitable relief the Court deems proper;

F. Court costs;

G. Pre-judgment and post-judgment interest at the rate set by law; and

H. All legal or equitable relief this Court deems proper.


Respectfully submitted,

/s/ John L. Pittman III
John L. Pittman III, Esq., LLM[2]
Texas State Bar No. 24127922
New York State Bar No. 5880646
California State Bar No. PL482988
District of Columbia Bar No. 1742578
**JOHN L. PITTMAN III, APC | ATTORNEY AT LAW, APC**
925 B Street, Suite 604
San Diego, California 92101
Main: 833-575-4040 - Fax: 877-575-5264
Direct: 760-575-4040 – Email: info@jp3law.com
jlpittmaniii@jp3law.com
*COUNSEL FOR PLAINTIFF*
*VICTORIA ALEXIS ROBERT*

Unofficial Copy Office of Marilyn Burgess District Clerk